IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


EARL BRYANT, JR.                                                                                    PLAINTIFF


v.                                       No. 04:04CV00720


JO ANNE B. BARNHART, Commissioner,
Social Security Administration                                                             DEFENDANT


MEMORANDUM OPINION AND ORDER

Pending before the Court are the proposed findings and recommended disposition of the Magistrate Judge regarding the final decision of the Commissioner of Social Security Administration denying Plaintiff's claim for Disability Insurance benefits.

After carefully reviewing the record, the Court is unable to accept the proposed findings and recommended disposition of the Magistrate Judge which, in substance, affirms the denial of benefits to the Plaintiff. The Court is persuaded that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence and that the case should be remanded for a proper and objective reconsideration of the evidence submitted and consider ordering consultative examinations.

BACKGROUND

On May 8, 2001, Plaintiff protectively filed his application for supplemental security income (SSI) benefits under Title XVI of the Act. Plaintiff alleged a disability onset date of

October 10, 1999, due to joint pain, chest and shoulder pain, high blood pressure and swelling in his knees and feet. Plaintiff's application was denied at the initial and reconsideration levels.

At Plaintiff's request, a de novo hearing before an Administrative Law Judge (ALJ) was conducted on July 30, 2003, in Little Rock, Arkansas. ALJ Donald Rebsamen issued an adverse decision on May 24, 2004, holding that Plaintiff was not disabled within the meaning of the Act. On July 10, 2004, the Appeals Council declined review of the decision. Accordingly, the May 24, 2004, decision became the final decision of the Commissioner. This action was instituted by Plaintiff on July 28, 2004.

Plaintiff testified at the administrative hearing that he was 57 years of age; that he possessed a high school diploma and could read and write; that he had ceased work on October 10, 1999, and has not done any work since that date; and that he has not had any source of income since October 10, 1999. Plaintiff further stated that his past work, as a grocery store operator for thirty years, consisted of stocking supplies, butchering, sale activities and as a cashier. He further stated that lifting activities consumed approximately 50% of the time lifting items from 20 pounds to 40 pounds in weight.

Plaintiff further stated that his illness commenced in 1998, due to increased level of high blood pressure as well as pain in his legs, joints, chest and back; that he had difficulty in using his left hand at times and could not do any significant walking and would have to use a cane when he walked; that he could sit for 15 to 20 minutes and would become dizzy; that he could lift approximately 10 pounds with his right hand; and that he depended upon his children for assistance.

Marcia Stewart, Plaintiff's daughter, testified that she, a brother and a sister became most concerned about Plaintiff's physical condition and the unusual deterioration of conditions

in his grocery store; that she cleaned the store, paid bills, ordered supplies and stocked the materials while the brother performed the butchering and other activities in an attempt to improve conditions at the store and lessen the affliction and great harm Plaintiff was experiencing by working in his store; that on one occasion, while Plaintiff was on duty at the store, she carried the Plaintiff to the emergency room at the Saint Vincent Hospital to receive medical treatment; that during the last year Plaintiff operated his business, Plaintiff had "a lot of headaches . . . and had more blackouts than two;" that she and her brother performed household chores such as cooking, emptying trash and cleaning the house because the mother was also disabled and receiving social security benefits. In addition, the daughter gave the following significant testimony regarding the Plaintiff's physical condition:

> "A. . . . He owned that grocery store for many years and I've seen him put in hard work and he worked when he could. And then in the last year we had to force him out of the store. We had to force him to, you know, to close it down. He didn't want to. You know, he was just, like, well this all I know. This is how I make my living. I was, like well, Dad, you can't do it like you used to ."

The medical evidence in the record reflects that on September 18, 2001, a medical examination revealed that he was taking Vioxx, Tylenol as needed, and Atenenol; that Plaintiff experienced headaches, chest pains, right ulner parathesis, high blood pressure, ankle, shoulder, knee and elbow pain.

Baptist Hospital medical records noted Plaintiff had complaints of headaches and shortness of breath and headaches were an eight on a scale of ten. Dr. Tommy Love gave Plaintiff a diagnosis of syncope[1] episode of uncertain origin, possible hyperventilation

---

[1]Syncope is defined as: Loss of consciousness and postural tone cause by diminished cerebral blood flow. See: PDR Medical Dictionary, Second Edition. The evidence reflects

3

syndrome, hypertension and degenerative arthritis of knees.

The ALJ, after invoking the five-step analysis prescribed by the Regulations (See: 20 C.F.R.§404152.0) made the following relevant findings:

> [C]laimant has the residual functional capacity to perform a full range of exertional work activity on all levels because his alleged impairments, individually and in combination, give rise to limitations that are only slight. He can perform all basic work-related activities at all exertional levels which includes the capacity to sit, stand, walk, push, pull, carry, lift, and engage in tasks that require gross and fine digital dexterity. . . . There is little evidence in the way of objective clinical or laboratory findings in his record that would support his contention that he had disabling impairments. . . . His alleged exertional impairments are nothing more than slight abnormalities that have no more than a minimal effect on his ability to do basic work . . . .
>
> . . . . In this case, the administrative law judge concludes Mr. Bryant can perform a narrowed range of medium work.
>
> . . .
>
> The undersigned concludes that the testimony of Mr. Bryant is not credible because it is inconsistent with the objective medical evidence and other evidence of record. Much in his case depends on the evidentiary weight placed on his credibility because there is a paucity of pathological findings in this case. The medical evidence shows that his last medical treatment had been in 1997, but there is no evidence in the file that he had medical treatment in October 1999. He does not have a longitudinal ongoing record of medical treatment for any medical condition. The testimony of claimant's daughter merely validated claimant's statements.

Plaintiff contends, in support of his request for reversal or remand, that the ALJ's credibility findings are insufficient as a matter of law given the fact that the ALJ did not state how Plaintiff's credibility was "inconsistent" or identify the evidence that Plaintiff's credibility was "inconsistent" with, but simply stated it was "inconsistent with the objective medical and other evidence of record"; that the ALJ did not develop the record given the ALJ's assertion that

---

that Plaintiff had at least two syncopes either in 1999 or 2000.

"there is a paucity of pathological findings in this case" and thus rejected Plaintiff's allegations of pain and other discomfort; that the ALJ had an affirmative duty to develop the record by scheduling Plaintiff for an examination; that the ALJ did not analyze Plaintiff's daily activities; the ALJ did not make creditability finding as to the witnesses' statements and did not deal with the fact that Plaintiff had stated that one physician had rated his pain as 8 out of a 10 level scale. In essence, Plaintiff argues that the ALJ failed to develop an accurate record in this "somewhat puzzling and disturbing case . . . dealing with an individual who is of advanced age (i.e., 57 at the time of the hearing.)"

## DISCUSSION

The Court is persuaded that Plaintiff"s assertion that the ALJ did not evaluate the evidence received forthrightly and straightforwardly and, in addition, did not take affirmative steps to develop an accurate record and, as a consequence, the ALJ's decision is not supported by substantial evidence has merit.

The initial concern of the Court is the ALJ's finding that " . . . the testimony of Mr. Bryant is not credible . . . . Much in his case depends on the evidentiary weight placed on his credibility because there is a paucity of pathological findings in this case. The medical evidence shows that his last medical treatment had been in 1997, but there is no evidence in the file that he had medical treatment in October 1999. He does not have a longitudinal ongoing record of medical treatment of any medical condition." In essence, the ALJ concludes that Plaintiff does not have any major disabling physical impairments because Plaintiff does not "have a longitudinal ongoing record of medical treatment for any medical condition." Meaningful,

5

Plaintiff testified that he has not had any source of income since October 10, 1999; that he had no insurance coverage to pay for medical treatment; that his children used their personal funds to pay his bills and that his wife is disabled and receives social security benefits are circumstances that indicate why Plaintiff did not seek medical treatment to deal with his physical problems. In substance, Plaintiff did not have the necessary funds to pay for medical treatment and it is apparent that he was reluctant to place additional burdens on his children. The ALJ's failure to consider these circumstances objectively resulted in a finding that Plaintiff did not have any serious medical problems.

The ALJ also found "The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of a narrow range of work, on all exertional levels . . ." The ALJ also stated that this finding is predicated on " . . . medical judgements and expert opinions from non-examining sources showing that claimant has the residual functional capacity to engage in work activity . . . ." See: Nevland v. Apfel, Commissioner of Social Security, 204 F. 3d 853 (8th Cir. 2000) observing: "The key issue in this case is [claimant's] RFC. This is a medical question." The issue, of course, is not whether [claimant] has had heart attacks, documented or not, but how his heart attacks are now affecting his ability to function physically." The reliance of the ALJ on "opinions from non-examining sources" does not satisfy the ALJ's duty to fully and fairly develop the record..

Significantly, Plaintiff's daughter testified that on one occasion while she was assisting her father in the operation of his grocery store, she carried her father to the emergency room at Saint Vincent Hospital to receive medical treatment and that she and her brother " had to force him out of the store. We had to force him . . . to close it down. He didn't want to." Again, the

Court is persuaded that the ALJ failed to consider objectively additional circumstances illustrating the serious physical problems. Here, Plaintiff's children actually compelled and forced him to close a business that he structured, cherished and operated for thirty years because of suffering due to his physical problems. This speaks volumes. The ALJ disregarded the force and value of this evidence and embarked on a course of speculation and conjecture. In addition, this observation applies with equal force regarding the ALJ's finding, in essence, that the daughter's testimony was not creditable. See: Nevland v.Apfel, 204 F. 3d 853 (8th Cir. 2000) (stating that it is well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in his case, the claimant is represented by counsel).

Accordingly, the ruling of the Commissioner is reversed and the matter is remanded for proper and objective reconsideration of evidence submitted and consider ordering consultative examinations. This is a "Sentence Four" remand within the meaning of 42 USC §405.g.

IT IS SO ORDERED this 12, day of July, 2005.

_George Howard, Jr._
UNITED STATES DISTRICT JUDGE